894 F.Supp. 605 (1995)
F.N., By and Through his Next Friends and Parents, D.N. and M.N., Plaintiffs,
v.
BOARD OF EDUCATION OF SACHEM CENTRAL SCHOOL DISTRICT AT HOLBROOK; James A. Ruck, as Superintendent of Schools and Individually; Mary L. Bartley, as Assistant Superintendent for Instruction at Sachem and Individually; Rudolf R. Desantolo, as Assistant Superintendent for Pupil Personnel Services and Committee on Special Education Chairperson and Individually; and Charles Cardillo, as Principal of Sachem South High School and Individually, Defendants.
No. CV 95-1679.
United States District Court, E.D. New York.
July 10, 1995.
*606 Wasserman & Steen by Lewis M. Wasserman, Patchogue, NY, for plaintiffs.
Ingerman, Smith, Greenberg, Gross, Richmond, Heidlberger, Reich & Scricca by Christopher Venator, Northport, NY, for defendants.

*607 ORDER

SPATT, District Judge.
This action, brought by a tenth grade student and his parents, challenges the decisions of public school officials following the student's disciplinary suspension on January 5, 1995. The plaintiff F.N., by his "Next Friends and Parents" D.N. and M.N., brought an order to show cause on May 2, 1995, seeking a temporary restraining order and a preliminary injunction. The plaintiffs moved the Court for an order directing that (1) F.N. be readmitted as a tenth grade pupil at Sachem High School South, (2) the defendants cease and desist from continuing the suspension of F.N. from classes; (3) the defendants provide compensatory educational services to F.N. to the extent that he was denied those services since his suspension on January 5, 1995; (4) the defendants establish a "§ 504 committee" and convene a meeting to ascertain whether F.N. suffers from a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 794.
On May 12, 1995, the Court rendered an oral decision denying the plaintiffs' motion for a temporary restraining order and preliminary injunction. In order to clarify the Court's oral decision, and because of the legal significance of the issues it addresses, the Court will now render a written opinion formalizing its prior decision.

I. BACKGROUND
This action is brought pursuant to 20 U.S.C. § 1400 et seq. (Individuals With Disabilities Education Act) ("IDEA"), 29 U.S.C. § 700 et seq. (The Rehabilitation Act), 42 U.S.C. § 1983 and 42 U.S.C. § 1988, the Fourteenth Amendment and New York State Education Law §§ 3202, 4401, 4404. The complaint alleges that F.N. is a disabled child and/or a handicapped child within the meaning of these laws by reason of emotional disturbance. F.N. is described as a sixteen-year-old tenth grade student, whose history of academic, social and emotional difficulties date back to his kindergarten year. Allegedly the plaintiff had never, prior to a January 5, 1995 incident, manifested misconduct at school that was sufficiently serious to warrant the imposition of discipline.
On January 5, 1995 F.N.'s Spanish teacher reported that while she was alone in the classroom with F.N., he loosened his pants and masturbated, following her around the room and into the hallway, despite her direction that he leave the room. Following this incident, F.N. was suspended from school for a period of five days for inappropriate sexual behavior directed at a female teacher.
The complaint alleges that on January 10, 1995 F.N.'s parents and their former attorney attended a superintendent's disciplinary hearing, pursuant to New York State Education Law, which provides:
[n]o pupil may be suspended for a period in excess of five school days unless such pupil and the person in parental relation to such pupil shall have had an opportunity for a fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses against such pupil and to present witnesses and other evidence on his behalf....
N.Y.Educ.Law § 3214(c) (McKinney 1988). It is further alleged that at this hearing the parties agreed that: (1) F.N. would be referred to the Committee on Special Education ("CSE") following psychological, psychiatric and educational evaluations, which would be paid for by the district; (2) home instruction would be provided for F.N. during the evaluation process; (3) the purpose of the referral to the CSE was to determine the appropriate education program for F.N.; and (4) the evaluations would lead to the design of a proposed individually tailored educational program for F.N., with an opportunity for his parents to comment on the plan.
The complaint alleges that F.N.'s parents were not advised by the school district at the January 10, 1995 meeting, of their son's rights under IDEA, the Rehabilitation Act, or N.Y.Educ.Law Article 89, which concerns children with handicaps. In response, the defendants allege that, although not required to do so by law, they fully apprised the plaintiffs of their rights under IDEA and also gave them a packet of printed information *608 entitled "Parental Due Process Rights," a copy of which is annexed to the defendants' papers in opposition to this motion. The plaintiffs deny that they received this information.
Thereafter, on January 17, 1995 and January 31, 1995, F.N.'s parents wrote to the school, stating objections to F.N.'s continued suspension and to his home instruction, which apparently was not being conducted on a reliable or regular basis for ten hours each week as required. The school's attorney responded by letter dated February 3, 1995 stating that the parents, represented by counsel, had agreed that F.N. would be instructed at home while the evaluations were pending. On February 8, 1995, the plaintiffs' attorney again wrote to the school complaining that comparable instruction had not been provided as agreed upon and as required by IDEA, the Rehabilitation Act and the Americans with Disabilities Act.
On February 15, 1995, the D.N. and M.N. submitted a letter to the school from Dr. Alida Schubert, a psychologist who apparently had known F.N. professionally for more than ten years and who rendered an opinion that (1) F.N. would not endanger himself or those around him, (2) F.N. needed in-school counselling as well as private psychiatric help, and (3) he should be returned to school. An evaluation conducted on February 15, 1995 and February 16, 1995, by school psychologist Louis E. Gray came to the same conclusions and further stated that F.N. should be considered for return to the school. Dr. Khin Latt, M.D., a psychiatrist, issued a report to the same effect as Dr. Gray. The Complaint does not explain whether Dr. Latt examined the plaintiff privately or at the request of the school.
The CSE met with F.N.'s parents on March 6, 1995 and by letter dated March 23, 1995, informed D.N. and C.N. that their son should not be classified as having a handicapping condition and that he was not in need of special services. That letter advised the plaintiffs of their right to an impartial hearing pursuant to N.Y.Educ.Law § 4404, which provides:
[i]f the recommendation of the committee on special education is not acceptable to the parent or person in parental relationship of a child ... such parents or persons in parental relationship shall notify the board of education of this situation and the board shall appoint an impartial hearing officer to hear the appeal and make a determination within such period of time as the commissioner by regulation shall determine.
N.Y.Educ.Law § 4404(1). The plaintiffs did demand an impartial hearing to review that determination, and their appeal is pending. Section 4404 also provides two subsequent layers of review to the parents. The impartial hearing officer's determination is reviewed by a review officer of the state education department. N.Y.Educ.Law § 4404(2). Judicial review of final determinations by the state education department may be obtained through an Article 78 proceeding. N.Y.Educ.Law § 4404(3). Under IDEA, final agency determinations may be appealed to the federal district court or state court. 20 U.S.C. § 1415(e).
The defendants allege that after the CSE found that F.N. did not have a disability pursuant to state and federal law, the school contacted the plaintiffs to reconvene the Superintendent's hearing regarding F.N.'s suspension, pursuant to N.Y.Educ.Law § 3214. It is the defendants' contention that the plaintiffs have refused to attend the hearing and instead threatened to bring suit if F.N. was not allowed to return to school.
By affidavit dated April 25, 1995, submitted in support of this motion, Dr. Khin Latt states that after seven visits with F.N. he has reevaluated his earlier findings, which recommended that F.N. return to the regular classroom. Dr. Latt now concludes that F.N. is an emotionally disturbed student within the meaning of IDEA and the Rehabilitation Act. Dr. Latt also states that F.N. is not a danger to himself or others and that he is suffering an adverse impact from his continued exclusion from school. The plaintiffs state that they commenced this action because F.N. has been continuously excluded from school since January 5, 1995.
The complaint alleges that F.N. has been deprived of his rights to due process with *609 regard to (1) his disciplinary suspension from regular classes, and (2) his identification and evaluation as a disabled student. The plaintiffs ask the Court to grant preliminary injunctive relief returning F.N. to regular classroom placement.

II. DISCUSSION

A. The preliminary injunction standard
In the seminal case of Jackson Dairy Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979), the Second Circuit set forth the applicable standard in this Circuit for obtaining preliminary injunctive relief. According to Jackson Dairy, the movant must clearly establish the following:
"(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief" (Jackson Dairy, supra, 596 F.2d at p. 72); see also Alan Skop, Inc. v. Benjamin Moore, Inc., 909 F.2d 59, 60 [2d Cir.1990]; Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972 [2d Cir.1989]).
This standard was recently reiterated by the Second Circuit in Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir.1994) and ICN Pharmaceuticals, Inc. v. Khan, 2 F.3d 484, 490 (2d Cir.1993). Fed.R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review. See Society for Good Will to Retarded Children, Inc. v. Cuomo, 902 F.2d 1085, 1088 (2d Cir.1990); Weitzman v. Stein, 897 F.2d 653 (2d Cir.1990).
The plaintiffs complain that their due process rights under the Fourteenth Amendment have been violated by the defendants' continuing suspension of F.N. from regular high school classes. The plaintiffs also claim rights under three acts that concern persons with handicaps, namely (1) Article 89 of the New York Education Law ("Children with Handicapping Conditions"), (2) 20 U.S.C. § 1400 et seq. (the "Individuals with Disabilities Education Act" or "IDEA") and (3) 29 U.S.C. § 701 et seq. (the "Rehabilitation Act"). The plaintiffs' claims under these acts concern F.N.'s due process rights with regard to his assessment as a student with a handicapping condition.

B. Entitlement to public education
The plaintiffs contend that F.N. has a statutorily created property and liberty interest in a free education system protected by the 14th Amendment and that the defendants have arbitrarily and capriciously deprived him of that interest without due process. New York Education Law § 3202(1) provides that a person over five and under 21, residing in the territorial limits of Sachem, and who has not received a high school diploma is entitled to attend school free of charge. The Supreme Court has held that where states extend the right to education, that right cannot be withdrawn on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct actually occurred. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Due process means that a ten day suspension requires that a student receive written notice of the charges and an opportunity to respond either in advance or immediately following removal from school. Id. In New York, no pupil may be suspended for a period in excess of 5 days without notice and an opportunity to be heard. N.Y.Educ.Law § 3214.
Here, F.N. was suspended on January 5, 1995 and a hearing pursuant Section 3214 was conducted by the superintendent on January 10, 1995. It appears that the notice and hearing provided by the defendants comport with the process that is due under the Fourteenth Amendment according to Goss, supra. At the hearing D.N., M.N. and the defendants agreed that F.N. would be referred for evaluations and receive home instruction pending completion of the evaluations. It appears that the school-directed evaluations did take place and resulted in a determination that F.N. was not handicapped. However, it also appears that the home instruction provided was problematical with regard to its regularity and reliability. At oral argument on May 4, 1994, the Court requested that the attorney for the defendant address any difficulties attending F.N.'s home instruction *610 with his clients. The defendants assured the Court that they intend to provide home instruction for the balance of the school year or until the Section 3214(c) hearing is reconvened to discuss the matter of F.N.' placement with his parents. The Court is distressed to learn that there are still problems with the home instruction.
The defendants also state that the initial hearing under N.Y.Educ.Law § 3214 was suspended upon agreement of the parties pending the evaluative testing. Now that the testing is complete and the CSE has made its recommendation not to classify F.N. as handicapped, the defendants contend that the plaintiffs refuse to attend a reconvened Section 3214 hearing for the purpose of determining what disciplinary measures, if any, are appropriate. Section 3214 does not preclude the school district from suspending students for longer than five days, it merely requires notice and a hearing and that immediate steps be taken for alternative instruction.
With regard to the plaintiff's claim that he has been denied due process in connection with disciplinary suspension from school, it appears to the Court that the school has followed and continues to satisfy the procedures required by state law and the constitution. The plaintiffs' first allegation, namely that F.N.'s suspension deprives him, without due process, of his entitlement to public education by N.Y.Educ.Law § 3202, does not involve F.N.'s special needs assessment. As stated above, it is this Court's view that the notice and hearing provided by the Sachem school are procedurally adequate and satisfy due process concerns with regard to the disciplinary suspension. Apparently, the plaintiffs have declined to proceed with the disciplinary hearing that is available to them. It is the school's position that it is ready to reconvene the Section 3214 hearing to discuss the appropriateness of continued suspension or other disciplinary action. The plaintiffs should not be heard to complain that they have been denied due process when they decline to participate in the available procedures prescribed by law. Therefore, the Court finds that the plaintiffs have not made a showing that would justify granting a preliminary injunction under the standards set forth in Jackson Dairy, supra, in that there is no likelihood of success on the merits or serious questions going to the merits of the issue relating to the school providing due process in connection with the disciplinary suspension.
The Court is concerned about the duration of F.N.'s suspension and the problems attendant to the home instruction provided by the school. While the balance of hardships tips in favor of a student whose regular education has been interrupted for a lengthy period, the plaintiffs have not established that the school district has violated any prescribed procedure with regard to notice and hearing. In fact, the school authorities appear to have followed all the requirements of law with regard to this suspension and the potential relief from the suspension. The plaintiffs apparently do not want to attend a hearing that will determine whether the suspension will be terminated and F.N. returned to school. In so doing, they have declined to follow the procedures that the law provides to them. Accordingly, the plaintiffs have not demonstrated that there are serious questions concerning the merits of their due process claim, much less that they are likely to succeed on the merits of that claim.

C. Federal and state laws protecting handicapped persons
The plaintiffs also claim property and liberty interests under statutes that deal with children with handicapping conditions, namely the IDEA, the Rehabilitation Act and N.Y.Educ.Law Article 89. The Court notes that although the complaint identifies F.N. as a handicapped child, at this point no such determination has been made by the school. Handicapped children within the meaning of the IDEA are
mentally retarded, hard of hearing, deaf, speech or language impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities, who by reason thereof require special education and related services. *611 20 U.S.C. § 1401(a)(1); see also 29 U.S.C. § 706(8)(B) (providing that a handicapped individual means any person who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment"). The CSE determination that F.N. is not a handicapped student in need of special educational services is at issue between the parties, and the plaintiffs have requested an impartial hearing pursuant to New York state law to review that determination. The plaintiffs seek this temporary restraining order and preliminary injunction returning F.N. to regular classes pending the outcome of their appeal of the CSE determination that F.N. is not a handicapped student.
The plaintiffs contend that the Court has authority under the "stay put" provisions of the abovementioned statutes to order F.N. to be reinstated to the Sachem School regular tenth grade classes pending his parents' appeal of the CSE determination that he is not handicapped. "Stay put" refers to provisions requiring that a school maintain a student in his or her current educational placement pending exhaustion of procedures regarding the placement of students with handicapping conditions. See e.g., 20 U.S.C. § 1415(e)(3); N.Y.Educ.Law § 4404(4). On the other hand, the defendants argue that if the "stay put" provisions apply, F.N. should "stay put" on continued suspension with home instruction because that was his educational placement when it was determined that F.N. should be evaluated to determine whether he had special educational needs.
In the Court's view there is a threshold matter to consider with regard to the plaintiffs' claims under the IDEA and the Rehabilitation Act, namely subject matter jurisdiction. The IDEA requires that states receiving federal education grant funds under the act, design an "individualized education program" (an "IEP") for each disabled child. 20 U.S.C. § 1401; see Honig v. Doe, 484 U.S. 305, 310, 108 S.Ct. 592, 597, 98 L.Ed.2d 686 (1988). The Second Circuit discussed the IDEA as follows:
[r]ather than detailing the precise substantive rights applicable to all affected children, Congress opted for individually tailored programs  programs crafted by parents and educators working together to determine what is appropriate for each child. Congress recognized that such an unconventional approach would require extensive procedural safeguards to protect the educational rights of children with disabling conditions. Thus the scope of these procedural protections  which this case requires us to examine  must be determined in light of their role in ensuring the appropriate application of the Act.
Heldman v. Sobol, 962 F.2d 148, 150 (2d Cir.1992).
Under the IDEA, parents may seek review of any determination relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). However, prior to seeking judicial review in either state or federal court, initial review procedures at the state or local level must be exhausted. Id. § 1415(b)(2) & (e). New York receives IDEA funds and complies with its requirements as follows:
in New York state, the IEP is produced by a Committee on Special Education ("CSE"), whose members are appointed by the board of education or trustees of the school district. N.Y.Educ.Law § 4402(1)(b)(1). New York provides for a two tiered system for the review of IEPs. A hearing officer, appointed by the board of education from a list of state-certified officers, conducts the initial hearing and makes a recommendation to the board. N.Y.Educ.Law § 4404(1); 8 N.Y.C.R.R. § 200.5(c)(1). Parties may appeal to [a state review officer] for review of the initial hearing. N.Y.Educ.Law § 4404(2); 8 N.Y.C.R.R. § 276.10.
Heldman, supra, 962 F.2d at 152.
The plaintiffs in this case state that they have requested an impartial hearing under N.Y.Educ.Law § 4404(1), and that the appeal is pending. The IDEA clearly states that state and federal district courts have jurisdiction to hear appeals from final decisions of *612 the state education agency. 20 U.S.C. § 1415(e). Here, the plaintiffs still have two levels of review available to them, namely (1) the impartial hearing and (2) the review by the state commissioner of education, before they may seek relief in this Court.
The Second Circuit has held that actions brought pursuant to IDEA must adhere to the exhaustion requirement, unless to do so would be futile because the agency is acting in violation of the law or is unable to remedy the alleged injury. Heldman, supra 962 F.2d at 158. Futility is not a problem here. Indeed, the plaintiffs draw the Court's attention to a ruling by the state commissioner of education that a handicapped child who was suspended from the regular classes he attended and placed on home instruction should be returned to his pre-suspension placement in regular classes pending appeal of his IEP determination. See Appeal of a Student with a Disability, 33 N.Y.Ed.Dept. Rep. 16 (1993). Clearly, if appropriate, the state commissioner of education is able to provide the plaintiffs with the remedy they seek.
The plaintiffs also seek relief from this Court under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., which prohibits discrimination on the basis of a handicapping condition. Congress addressed the relationship of the IDEA with the Rehabilitation Act as follows:
[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f) (emphasis supplied). Accordingly, the plaintiffs' failure to exhaust administrative procedures pursuant to New York state law means that their invocation of this Court's jurisdiction under the Rehabilitation Act is also premature.
The plaintiffs argue that the "stay put" provisions of the laws protecting handicapped students are applicable to obtain preliminary relief from this Court. According to the plaintiffs, "it is well settled law, however, that I.D.E.A.'s procedural protections are not limited only to children who have previously been determined to have disabilities." The plaintiffs cite M.P. by D.P. v. Governing Board of Grossmont Union High School Dist., 858 F.Supp. 1044 (S.D.Cal.1994) and Hacienda La Puente School District of Los Angeles v. Honig, 976 F.2d 487 (9th Cir.1992) to support their position. These cases hold that the due process provisions of the IDEA apply even to children who have not previously been determined to have disabilities. Id.
The Court notes that the Hacienda case affirms the decision of an impartial hearing officer to invoke the stay put provision for a student pending initial assessment for a disability. Hacienda does not address the issue of seeking such relief from a federal court prior to exhausting administrative procedures. M.P. by D.P. reasons that children who allege a disability may invoke the "stay put" provisions, effectively by-passing a school's disciplinary procedures of suspension and expulsion. M.P. by D.P., supra, at 1047-48. However, M.P. by D.P. concludes that the court's inquiry on a motion to compel a school to maintain a student's prior educational placement during special needs evaluation is limited to whether there is a substantial likelihood that child will injure himself or others. Id. at 1049 (citing Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), which holds that children determined to be handicapped must remain in current educational placement pending administrative or judicial review, unless the parents agree otherwise or unless a court determines that the student's behavior is dangerously disruptive).
The plaintiffs also contend that the "stay put" provision of Section 1415(e)(3) of the IDEA provides automatic injunctive relief for a disabled student, so that the Rule 65 criteria need not be satisfied. See Cronin v. *613 Board of Educ., 689 F.Supp. 197, 200-203 (S.D.N.Y.1988). Cronin discusses the ongoing review procedures that take place under the IEP system for disabled students and states,
[t]hus, the statute provides that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current placement until the dispute with regard to their placement is ultimately resolved.
Id. at 200-01. Cronin and the case upon which it and the plaintiffs here rely, Honig v. Doe, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), both concern the applicability of the "stay put" requirements to students who have been determined to have handicapping conditions within the meaning of the IDEA. In that respect these cases are significantly distinguishable from the present case. While the plaintiffs allege that F.N. is disabled within the meaning of IDEA, the Rehabilitation Act and N.Y.Educ.Law Article 89, no such determination has yet been made. In fact, Dr. Schubert and Dr. Gray recommended that F.N. be returned to regular classes, and the CSE determined that F.N. is not disabled. Dr. Latt originally stated that F.N. should be returned to normal schooling, then revised his view to conclude that F.N. is an emotionally disturbed student within the meaning of IDEA and the Rehab Act.
In the Court's view, neither the two California cases cited by the plaintiffs nor the Cronin case establish F.N.'s right to be returned to the classroom at this time, by this Court. The Second Circuit has not addressed the applicability of the "stay-put" provisions to a student who alleges a disability, but is in the process of appealing a CSE determination that he is not disabled. However, the Second Circuit has expressly addressed the issue of exhaustion of administrative procedures as a prerequisite to judicial review. See e.g., Heldman, supra, 962 F.2d at 159 ("The exhaustion doctrine prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes."); see also Mrs. W. v. Tirozzi, 832 F.2d 748 (2d Cir.1987); Riley v. Ambach, 668 F.2d 635 (2d Cir.1981). In addition, this Court agrees with other district courts in this circuit that adhere to this reasoning. See e.g., Hope v. Cortines, 872 F.Supp. 14 (E.D.N.Y.1995) ("The failure to exhaust such administrative procedures deprives the court of subject matter jurisdiction."); Jacky W. v. New York City Board of Educ., 848 F.Supp. 358, 360 (E.D.N.Y.1994) ("Jurisdiction to review claims for violation of IDEA is vested in district courts only upon the exhaustion of available state administrative review."); Stellato v. Board of Educ., 842 F.Supp. 1512, 1515 (N.D.N.Y.1994) ("Simply stated, unless plaintiffs first exhaust available state administrative remedies [under IDEA], the federal courts are without jurisdiction to hear the case"); Vander Malle v. Ambach, 667 F.Supp. 1015, 1029 (S.D.N.Y.1987) ("Unless plaintiff has exhausted the administrative remedy, the federal courts lack jurisdiction to hear the case.").
While the plaintiffs state correctly that the Rehabilitation Act does not set forth an exhaustion provision, IDEA specifically identifies the Rehabilitation Act as being bound by IDEA's exhaustion requirement. 20 U.S.C. § 1415(f). The plaintiffs have not exhausted the administrative procedures set forth in the IDEA and N.Y.Educ.Law § 4404 that are a condition precedent to this Court's jurisdiction to hear their claims under IDEA and the Rehabilitation Act in that they have not exhausted the appeal from the present CSE determination that F.N. is not disabled.
Accordingly, the claims pursuant to IDEA and the Rehabilitation Act are dismissed for lack of subject matter jurisdiction, without prejudice to renewal after exhausting the available administrative steps. Because the plaintiffs' claims under the Fourteenth Amendment are still before the Court, the Court declines to dismiss the pendant claims brought under New York Educ.Law Article 89.

III. CONCLUSION
For the foregoing reasons it is hereby
ORDERED, that the plaintiffs' motion for a temporary restraining order and preliminary injunction with regard to the claim that the defendants have deprived F.N. of a public *614 education, to which he is entitled by N.Y.Educ.Law § 3201, in violation of the Fourteenth Amendment is denied; and it is further
ORDERED, that the plaintiffs' claims pursuant to the Individuals with Disabilities in Education Act and the Rehabilitation Act are dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), on the ground that the plaintiffs have failed to exhaust the requisite administrative remedies.
SO ORDERED.